## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SEAN P. LALLY,** ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 05-11743-REK** |
| **v.** ) | |
| ) | |
| **DONALD MacLEA,** ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DONALD MacLEA'S MOTION TO DISMISS

Donald MacLea, the defendant, respectfully submits this memorandum of law in support of his motion to dismiss the plaintiff's complaint. The Complaint must be dismissed for several, mutually-independent reasons.

First, MacLea, a Massachusetts probation officer, is entitled to both absolute and qualified immunity. Specifically, this case arises out of a Massachusetts District Court judge's finding that the plaintiff violated the terms of his probation by failing to agree to random urine screens for drugs and alcohol - a recommendation made by a court-appointed psychologist - even though the plaintiff had agreed to submit to "treatment as deemed necessary" as part of his plea bargain. The plaintiff has sued MacLea for allegedly: 1) violating his right to due process of law by "modifying, altering or amending [his] preexisting conditions of probation"; and 2) malicious prosecution, under a state law theory.

Viewing the factual allegations in the light most favorable to the plaintiff, it is clear that MacLea's conduct was intimately connected to the existence and function of the judiciary and thus is subject to absolute immunity. Even assuming MacLea were performing a discretionary function by suggesting to the judge that the plaintiff had violated his probationary terms, the

2

doctrine of qualified immunity bars this suit because MacLea did not violate a clearly established

constitutional right of which a reasonable person would have been aware.  Finally, because the

district court judge, and not MacLea, was the person who determined that the plaintiff had

violated the terms of his probation, each of the plaintiff's claims, which attempt to hold MacLea

responsible for the incarceration that resulted from the judge's finding, are factual impossibilities

and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## THE ALLEGATIONS IN THE COMPLAINT

The Complaint and Jury Demand ("Compl.") alleges the following:[1]

"On July 13, 2000, the [plaintiff] pleaded guilty in the Quincy District Court to one count

of assault by means of a dangerous weapon and one count of possession of a class D substance.

On the assault charge, the [plaintiff] was sentenced to one year in the house of correction,

suspended for one year.  Additionally, the judge imposed on that charge the following probation

conditions: that the [plaintiff] (1) participate in a batterer's program; (2) refrain from further

abuse of the victim (his wife); (3) undergo evaluation for alcohol and drugs; and (4) submit to

"treatment as deemed necessary."  On the drug possession charge, the [plaintiff] was placed on

probation for one year.  On the same day, the [plaintiff] signed the conditions of probation

outlined above." *Commonwealth v. Lally*, 55 Mass. App. Ct. 601, 601, 773 N.E.2d 985, 986

(2002); Compl. ¶¶ 6-9.

"After the [plaintiff] was placed on probation, the sentencing judge asked a probation

officer to arrange for the evaluation of the [plaintiff], as required by one of the [plaintiff's]

_____

[1] Mr. MacLea supplements the allegations made in the complaint with the findings of the
Massachusetts Appeals Court in the case of *Commonwealth v. Lally*, 55 Mass. App. Ct. 601, 773
N.E.2d 985 (2002).

3

probation conditions.  A psychologist conducted the evaluation.  The psychologist concluded that

the [plaintiff] would not benefit from any more treatment than he was already receiving but

recommended that random urine screens for drugs and alcohol be made part of the [plaintiff's]

probation."  *Lally*, 55 Mass. App. Ct. at 601-602, 773 N.E.2d at 986-987.  Compl. ¶ 10.

Mr. MacLea "informed the [plaintiff] of the results of the evaluation and told him that he

would be required to submit to random urine testing.  The [plaintiff] refused to sign the new

condition of probation.  [Mr. MacLea] then had the [plaintiff] served with a notice of violation."

*Lally*, 55 Mass. App. Ct. at 602, 773 N.E.2d at 987; Compl. ¶ 11.

"On October 3, 2000, a hearing was held before the sentencing judge on the alleged

violation of probation charge.  After listening to the probation officer, the judge found that the

[plaintiff] had violated his probation because he had refused to sign the condition ordering him to

undergo random urine screens.  The judge revoked the [plaintiff's] probation and imposed a one-

year sentence to the house of correction."  *Lally*, 55 Mass. App. Ct. at 602, 773 N.E.2d at 987;

Compl. ¶ 12.

## ARGUMENT

**I.     THE CLAIMS AGAINST MacLEA MUST BE DISMISSED BECAUSE HE IS
        ABSOLUTELY IMMUNE FROM SUIT, HE IS ENTITLED TO QUALIFIED
        IMMUNITY, AND BECAUSE THE FACTS ALLEGED IN THE COMPLAINT
        FAIL TO STATE A COGNIZABLE CLAIM.**

A.     <u>MacLea Is Absolutely Immune From Suit</u>

To determine whether a particular government official fits within the common law

tradition of absolute immunity, or the more general standard of qualified immunity, the Court

must apply a "functional approach," *Richardson v. McKnight*, 521 U.S. 399, 408 (1997), which

4

looks to "'the nature of the function performed, not the identity of the actor who performed it.'"
*Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219,
229 (1988)).  When a government official is protected by absolute immunity, that protection is
not eroded no matter how erroneous the act may have been, how injurious its consequences, how
informal the proceeding, or how malicious the motive.  *Cleavinger v. Saxner*, 474 U.S. 193, 199-
200 (1985); *Brown v. Newberger*, 291 F.3d 89, 94 (1st Cir. 2002) (quoting *Cok v. Consentino*,
876 F.2d 1, 2 (1989)); *see Dennis v. Sparks*, 449 U.S. 24, 31 (1980) (allegations of malice or bad
faith in the execution of the officer's duties are insufficient to sustain the complaint when the
officer possesses absolute immunity).

"In cases involving prosecutors, legislators, and judges [the Supreme Court has]
repeatedly explained that the immunity serves the public interest in enabling officials to perform
their designated functions effectively without fear that a particular decision may give rise to
personal liability." *Clinton v. Jones*, 520 U.S. 681, 693 (1997).  The Supreme Court has
explained that safeguards such as "[t]he insulation of the judge from political influence, the
importance of precedent in resolving controversies, the adversary nature of the process, and the
correctability of error on appeal" reduce the need for private damages actions.  *Butz v.
Economous*, 438 U.S. 478, 512 (1978).  *See Cleavinger*, 474 U.S. at 201-202.  Although the First
Circuit does not appear to have ruled on the issue of whether a probation officer is entitled to
absolute immunity for recommending that a probationer be deemed in violation of his probation,
case law from other circuits, in conjunction with the Supreme Judicial Court's description of the
duties of a Massachusetts probation officer, leads inexorably to the conclusion that Mr. MacLea
is entitled to absolute immunity from this suit.

5

In *Demoran v. Witt*, the Ninth Circuit applied the functional approach and *Butz* factors and held that a California probation officer was entitled to absolute immunity with respect to the preparation of an erroneous pre-sentencing report which allegedly resulted in the plaintiff receiving an improperly long sentence. 781 F.2d 155, 157 (9th Cir. 1986). The court so held because the probation officer was serving a "function integral to the independent judicial process." *Id.* Numerous other circuit courts of appeals have reached the same conclusion regarding the issuance of pre-sentence reports. *See Turner v. Barry*, 856 F.2d 1539, 1540-1541 (D.C. Cir. 1988) (per curiam); *Freeze v. Griffith*, 849 F.2d 172, 174-175 (5th Cir. 1988); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir. 1984). The Tenth Circuit, among others, has ruled that federal probation officers are similarly exempt when issuing a pre-sentence report. *Tripati v. I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986), *cert. denied*, 484 U.S. 1028 (1988) (collecting cases).

In Massachusetts, "[t]he work of probation officers . . . is intimately connected to the existence and function of the judiciary." *First Justice of Bristol Div. of the Juvenile Court Dep't. v. Clerk-Magistrate of Bristol Div. of the Juvenile Court Dep't.*, 438 Mass. 387, 399, 780 N.E.2d 908, 917 (2003) (citing *Massachusetts Probation Ass'n. v. Commissioner of Admin.*, 370 Mass. 651, 657, 352 N.E.2d 684 (1976)). "Probation officers investigate backgrounds of criminal defendants, prepare presentence reports, and, when appropriate in the probation officer's judgment, recommend to a judge that any person convicted be placed on probation and on what terms." *Id.* at 399-400 (citing Mass. Gen. Laws ch. 276, §§ 85, 87). "The statute governing the duties of probation officers clearly establishes a relationship between the court and the probation officer whereby the probation officer is required to fulfill his or her obligations pursuant to the policy decisions of the sentencing judge." *A.L. v. Commonwealth*, 402 Mass. 234, 246, 521

6

N.E.2d 1017, 1024 (1988).

The SJC has also explained the role of probation officers when a convicted defendant is

believed to be in violation of the terms of his probation:

> Probation officers play a critical role in maintaining the effectiveness of
> probation orders and in proceedings when probation orders have been violated.
> The importance of their role with respect to the latter is reflected in the following
> observation: "Probation violation proceedings are among the most important
> matters within [the Trial Court's] jurisdiction.  The timely and proper conduct of
> these proceedings is essential to protect the rights of probationers as set forth in
> [F]ederal and [S]tate law, as well as to maintain the credibility, and thus the
> effectiveness, of probation orders.  Just as fundamentally, the proper and timely
> conduct of probation violation proceedings is necessary to vindicate the public
> trust.  Failure of the court to take appropriate action when a convicted defendant
> who has been given the benefit of probation is then alleged to have violated that
> order erodes public confidence in the judicial system."  Commentary to Rule 1 of
> the District Court Rules for Probation Violation Proceedings (2001).  It thus is
> essential that a judge possesses the authority to supervise closely the performance
> of probation officers and to ensure that probation services, both in and out of the
> courtroom are, on the whole, carried out efficiently and fairly.

*First Justice of Bristol Div. of Juvenile Court Dep't.*, 438 Mass. at 400-401, 780 N.E.2d at 918

(alterations in original).  These observations make clear that Massachusetts probation officers

serve a function integral to the judiciary, and that it is the trial judge who is the ultimate arbiter

on the issue of whether a probationer has violated the terms of his probation.

In the present case, MacLea's initial determination that the plaintiff had violated his

probation, and the subsequent finding of a violation by the sentencing judge, mirrors the

procedure described by the SJC.  Compl. ¶ 12; *Lally*, 55 Mass. App. Ct. at 602, 773 N.E.2d at

987 ("After listening to the probation officer, the judge found that the defendant had violated his

probation because he had refused to sign the condition ordering him to undergo random urine

7

screens.").[2]  Because Mr. MacLea followed the appropriate procedures as described by the

Commonwealth's highest court,[3] and was acting pursuant to policies that were set by the

sentencing judge, "it [would be] simply unfair to spare the judge who gave order[] while

punishing the officer[] who obey[s] them."  *Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th

Cir. 1989); *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980) ("a nonjudicial officer who

is delegated duties should not be a lightening rod for harassing litigation aimed at the court")

(internal quotations omitted).  In any event, because Mr. MacLea was performing a function

integral to the judiciary, he is absolutely immune from this lawsuit.  *Buckley*, 509 U.S. at 269.

      B.    <u>MacLea Is Also Entitled To Qualified Immunity</u>

      Even if this Court were to decline to grant MacLea absolute immunity, he nevertheless is

entitled to qualified immunity.  Qualified immunity protects state officials exercising

discretionary authority from civil lawsuits "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity privilege is:

> an entitlement not to stand trial or face the other burdens of litigation. . . . [I]t is
> immunity from suit rather than the mere defense to liability; and like absolute
> immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Consequently, a court should rule on a claim of

qualified immunity at the outset of a lawsuit.  *Harlow*, 457 U.S. at 818; *Siegert v. Gilley*, 500

---

[2] It bears noting that after finding the plaintiff in violation of his probation, the judge had
numerous dispositional alternatives, including continuing the probation, and thereby avoiding
incarceration.  *See, e.g., Commonwealth v. Herrera*, 52 Mass. App. Ct. 294, 295, 752 N.E.2d
833, 834-835 (2001) (citation omitted).

[3] The plaintiff makes no claim to the contrary anywhere in his complaint.  Further, the
Appeals Court's decision does not suggest any impropriety on the part of Mr. MacLea.

8

U.S. 226, 232 (1991) (immunity challenge should be decided at beginning of lawsuit so that a "defendant who rightly claims qualified immunity [need not] engage in expensive and time-consuming preparation to defend the suit on the merits").

"[T]he requisites of a qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court must ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Id.* at 201. If no constitutional guarantee has been infringed, the inquiry ends there and the defendant is entitled to qualified immunity. *Id.* If, however, a violation could be found based on a favorable view of the complaint, "the next, sequential step is to ask whether the right was clearly established." *Id.* Third, if the complaint clears that hurdle, the court must decide whether a reasonable person would have known his conduct infringed a clearly-established constitutional right. *Id.* at 202.

A defendant is entitled to qualified immunity if the court finds in his favor at even one step of the analysis set forth above. *Saucier*, 533 U.S. at 200-201. Here, however, the analysis cannot proceed past the first inquiry. Although it was established prior to the conduct complained of in this case that "only a judge has the authority to modify or alter the terms of a defendant's probation," *Lally*, 55 Mass. App. Ct. at 603, 773 N.E.2d at 987 (citing *Buckley v. Quincy Div. of Dist. Ct. Dep't.*, 395 Mass. 815, 819-820, 482 N.E.2d 511 (1985)), here, Mr. MacLea informed the plaintiff that he would be required to submit to random urine screens based upon the judge's imposition of the condition that the plaintiff "submit to 'treatment as deemed necessary.'" *Lally*, 55 Mass. App. Ct. at 601, 773 N.E.2d at 986. The treatment deemed necessary - by a court appointed psychologist - was to undergo random urine screens. While the

9

Appeals Court ultimately held that "the probation condition ordering 'treatment as deemed necessary' is [unconstitutionally] ambiguous," *Lally*, 55 Mass. App. Ct. at 603, 773 N.E.2d at 988, it was the sentencing judge, and not the defendant who issued it. Under these circumstances, no view of the facts supports the inference that Mr. MacLea's conduct violated the plaintiff's constitutional rights. *See Saucier*, 533 U.S. at 199; *Siegert*, 500 U.S. at 233-234 (defendant is entitled to qualified immunity where the facts alleged cannot "be held to state a claim for denial of a constitutional right").

Moreover, even if the Court were to rule that it was MacLea's conduct that resulted in the constitutional violation,[4] there is no basis to support a ruling that the right was clearly established. Indeed, the holding of the Appeals Court was that "the probation condition ordering 'treatment as deemed necessary' is ambiguous." *Lally*, 55 Mass. App. Ct. at 603, 773 N.E.2d at 988. The novelty of this holding is demonstrated by the court's lack of citation to authority on this point and its comment that the question was "likely to arise again." *Id.* at 602 n.1, 773 N.E.2d at 987.

Finally, the novelty of the Appeals Court's ruling also answers the third question of the *Saucier* inquiry, *i.e.*, that the defendant could not have known his conduct violated a clearly-established constitutional right in the defendant's favor. *Id.* at 202. For this reason as well, the plaintiff's lawsuit must be dismissed.

---

[4] Such a ruling would seem to rest on a particularly expansive view of the facts where it was the sentencing judge who ultimately determined that the plaintiff had violated his probation. *Lally*, 55 Mass. App. Ct. at 602, 773 N.E.2d at 987.

10

C.    The Lawsuit Must Be Dismissed Because The Claims Against MacLea Are Legally Impossible to Sustain

1.    The Section 1983 Claim

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes all facts pled in the complaint are true. *Padson v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005). The plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory.'" *Campagna v. Massachusetts Dep't. of Environmental Protection*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989), *rev'd on other grounds, Educadores Puertoriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004)); *see Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). If the facts do not justify recovery on a cognizable legal theory, the claim must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

In this case, the facts as pled by the plaintiff, taken as true, fail to state a claim against MacLea. In Count I, the plaintiff presses a Section 1983 claim on the grounds that MacLea "should have known he lacked jurisdiction to modify, alter or amend [the plaintiff's] preexisting conditions of probation." ¶¶ 16, 17. While this is a correct statement of the law, the facts as pled in the complaint do not support the notion that MacLea modified any of the plaintiff's probationary terms. In fact, as the plaintiff asserts, the judge who accepted his plea and suspended his house of correction sentence conditioned his probation on the plaintiff's willingnes to "submit to 'treatment as deemed necessary.'" Compl. ¶ 9. And it was a court psychologist who "recommended random urine screens for drugs and alcohol." Compl. ¶ 10. Acting on the court-ordered psychologist's recommendation, in conjunction with the judge's order that the

11

plaintiff "submit to 'treatment as deemed necessary,'" MacLea "surrendered"[5] the plaintiff to the

sentencing judge, who in turn found him in violation of the terms of his probation. Compl. ¶¶

11, 12. Under these facts, MacLea cannot be said to have altered the conditions of the plaintiff's

probation. Nor can he be said to have denied the plaintiff his right to the due process of law.

Consequently, the Section 1983 claim against MacLea must be dismissed. *See* Fed. R. Civ. P.

12(b)(6).

2.    The Malicious Prosecution Claim

To bring a claim of malicious prosecution under Massachusetts law, a plaintiff must

allege, with a factual basis: (1) the defendant instituted a criminal action; (2) he did so with

malice; (3) he knowingly did so without probable cause; and (4) the criminal proceeding

terminated in favor of the plaintiff. *Gutierrez v. Massachusetts Bay Transportation Auth.*, 437

Mass. 396, 405, 772 N.E.2d 552, 561 (2002); *Beecy v. Pucciarelli*, 387 Mass. 589, 593, 441

N.E.2d 1035, 1038 (1982) ("To assert a proper claim of malicious prosecution, the [plaintiff]

must plead facts" that support each element of the tort). The plaintiff has failed to satisfy any of

the elements.

To begin with, MacLea cannot be said to have initiated a criminal action. This is so

because "[r]evocation hearings are not part of a criminal prosecution." *Commonwealth v.

Durling*, 407 Mass. 108, 112, 551 N.E.2d 1193, 1195 (1990) (citing *Gagnon v. Scarpelli*, 411

U.S. 778, 782 (1973)). Rather, "[i]t is the district attorney who originally charges and prosecutes

the defendant" and it is "the district attorney [who] is the real party in interest." *Commonwealth*

---

[5] *See, e.g., Commonwealth v. Negron*, 441 Mass. 685, 687, 808 N.E.2d 294, 297 (2004)
(describing a probation officer's act of "surrender[ing]" a defendant for an alleged violation of
probation).

12

*v. Negron*, 441 Mass. 685, 687, 808 N.E.2d 294, 298 (2004). Although MacLea conducted the revocation hearing, this fact does not support the first element of the tort. *Gutierrez*, 437 Mass. at 405, 772 N.E.2d at 561. Consequently, the plaintiff has not, and cannot, allege facts to support the first element of his malicious prosecution claim. This alone suffices to dismiss the claim. *See Beecy*, 387 Mass. at 593, 441 N.E.2d at 1038.

Further, to demonstrate the second element, malice, the plaintiff must show that the defendant acted with an improper motive, such as vexation, harassment, ill will or personal gain. *See, e.g., Phil v. Morris*, 319 Mass. 577, 580, 66 N.E.2d 804, 806 (1946); *Beecy*, 387 Mass. at 594 n.9, 441 N.E.2d at 1038; *Conway v. Smerling*, 37 Mass. App. Ct. 1, 3, 635 N.E.2d 268, 271 (1994). In the criminal context, the State must have "made perverse use of the litigation process" by pursuing a criminal conviction for some purpose "other than bringing the targeted person to justice. . . ." *Id.* at 3, 635 N.E.2d at 271. Here, there simply are no factual allegations from which the Court could infer that MacLea was driven by personal gain, ill will or any purpose other than "brining [the plaintiff] to justice." *Id.*, 635 N.E.2d at 271. Indeed, as the plaintiff's complaint, and the Appeals Court's opinion make clear, the defendant was acting in conjunction with a judicial order and the recommendation of a court-appointed psychologist. Compl. ¶¶ 9, 10; *Lally*, 55 Mass. App. Ct. 601-602, 773 N.E.2d at 986-987. Under these circumstances, the plaintiff has failed to offer any evidence of malfeasance. The claim must be dismissed for this reason as well.

Finally, the plaintiff cannot demonstrate that MacLea continued the prosecution despite knowing of a lack of probable cause to do so. This can be seen most readily by the trial judge's finding that the plaintiff had violated his probation. Had there been insufficient probable cause,

13

or any indication that the Appeals Court would find the probationary term that the plaintiff voluntarily accepted, unconstitutionally vague, it is likely that the judge would not have included it in his initial order or used it as a basis of a finding of a probation violation. For this reason as well, the complaint must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this lawsuit with prejudice.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Daniel I. Smulow
Daniel I. Smulow (BBO # 641668)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2949

Dated: March 31, 2006

**Certificate of Service**

I hereby certify that a true copy of the above document was served on Sean P. Lally, 79 Chapman Street, Quincy, MA 02107, by depositing the same in the outgoing mail bin in the office of the Attorney General, on March 31, 2006.

/s/ Daniel I. Smulow